Ellis Davis

 vs No.8673

American Ry.Express Co.

January 22nd 1923

Court of Appeal
Parish of Orleans

Jan'y 22/1923
Jno. Schroder
Clerk

Charles F.Claiborne,Judge.

This is a suit to recover the value of goods not delivered.

Petitioner avers that on January 23rd 1920 at Plattsburgh La.he shipped through Ephraim Northern by the American Railway Express Co.defendant herein,a hog to be delivered to him at his address in New Orleans;that said hog was dressed and in good condition at the time of shipment;that said shipment arrived in New Orleans at about 7.30 P.M. on the same day;that on the next day January 24th and on the succeeding day January 25th he inquired about his hog at the office of the defendant in New Orleans,but was unable to obtain any information;that on the following day January 26th he again called at the office of the defendant when he was there told that the hog had been distroyed on account of its decomposed condition;that the hog was worth $200.00 ; that it was lost through the negligence of the defendant's employees.

The defendant admitted the shipment,but avterred"that when the said hog was delivered to respondent,it was in such condition that it deteriorated,notwithstanding proper handling;" it admitted that the hog arrived in New Orleans at about 7.30 P.M.of January 23rd 1920; it admitted that plaintiff was told that the hog had been destroyed,but denied all other allegations of the petition.

There was judgment for plaintiff and defendant has appealed.

Ephraim Northern lives in the neighborhood of West

Plattenburgh,West Feliciana;on the morning of January 23rd he
and plaintiff herein killed a hog;he had known the hog for some
three years and it was in fine condition;he has raised hogs
all his life;this hog was stabled and fed up for killing;they
stabbed the hog,scalded him,and got all the hair off of him,
cleaned him white,gutted him,and washed him out clean with cold
water;the weather was cool;a hog killed in that weather could
not spoil in four or five days;the hog was packed in two sacks
with two tags on each sack with the address"From E.Northern,
Plattenburg,La. To Ellis Davis.2236 Eighth Street New Orleans;

Davis was the owner of the hog;it weighed over five
hundred pounds after killing;he and Davis took the hog to the
Express Co.and delivered it about 2 O'Clock that evening,when
the train came in;Davis went down to the train with the hog;
the hog was about three years old.

Ellis Davis corroborated Northern;he paid him $30m to
fatten the hog ;after killing it they cut it in two,and put each
half in a sack;when they delivered the hog the man in the train
took his knife and touched the sack to see if the meat was
fresh;Plattenburg is about 100 miles from New Orleans,he got
on the same train as the hog at 2 O'Clock and arrived in New
Orleans at 7.30. that night;he saw the hog until the man took
it off the train and put it in the depot,and he told him,he
could get his hog early in the morning;he went down to the
station and someone told him,the meat was transferred to the
Union Depot; he went to the Union Station and saw Mr Surgi;
on January 26th he again called for his hog on Mr Surgi who told
him the meat was spoiled and they had dumped it ; Mr Surgi
sent him to the receiving office where he saw Mr Tate;he went
with the driver of the Company to the dump,but they did not see
the hog;he would have to pay 60¢ a pound for meat at the market
thinks he could have sold it for 50¢ but he asks for 40¢ ;

he had bought a large barrel to salt the meat,and would not have killed the hog if the weather had not been cold;no one ever came to him to tell him that the hog was spoiled and had to be dumped.

On behalf of the defendant,L.G.Dessonnier testified that he is the traffic inspector for the defendant company;he made a report of the shipment which he produced;it is not dated; it states that the consignee was E.Davis 2236 Eighth Street New Orleans ; two sacks dressed hog ; arrived January 23rd at Union Depot ; rotten and not fit for delivery,dumped ; weather real warm ; the report was made to R.G.Miller,claim agent,the odor of the hog was strong,they could hardly stand around it, and when they" cut the sack it was full of maggots;he saw the hog on the morning of January 24th ; they ordered taken to the dump.

Claim agent,R.G.Miller,adressed a letter dated May 6th 1920 to the plaintiff herein informing him that his claim was declined because the hog had arrived in a decomposed condition and they"would not be allowed to aerw carry the hog through town in an attempt to make delivery,consequently it was con-signed out to the dump without delay":that the defendant's driver had called at his " house during the morning of January 24th to inform you (him ) of what had been done,and that he found no one at home."

F.Surgi,depot agent,said that he saw the hog on January 24th ; he smelled something very bad and he opened the sack and it was wormy,and he arranged with the wagon to take it out to the dump; the hog was very badly decomposed and wormy;if the hog had been in good condition it should have been delivered on the 24th at it arrived on the 23rd ; Dessonnier and himself condemned the hog;the weather was " very hot " on that day and the day before,they did not send any notice to the plaintiff ; having a local address on the delivery route it was not necessary to send a postal notice;-he and Dessonnier condemned the hog.

It was admitted that if driver Weber, of defendant Company was present he would testify that he called at the house of Ellis Davis on January 24th to inform him that it was necessary to dump his hog on account of its condition. It was also admitted that if H.A.Bradley, Superintendent of Terminals, was present he would testify that he saw the hog, that it was rotten and working (reeking) with maggots and the odor was so bad that it was necessary to dump the hog.

The defendant mailed to the plaintiff on January 26th a postal card informing him that it held for his account meat, charged $2.49

The reports of the weather bureau U.S.Department, establih ed the following conditions of the atmosphere:

January 23rd Maximum 80, Minimum 68-Mean 74-Wind S-Part cloudy.

January 24th Maximum 70, minimun 48- Mean 59- Wind north east- Cloudy.

The temperature at six o'clock of the morning of the 23rd was 68 and rose gradually up to 80 at 3 o'clock P.M., when it again fell to 65 on the morning of the 24th.

These incontestable figures completely contradict and destroy the testimony of Dessonnier and Surgi that the weather was on those two days "real warm" and "very hot".

The law of the case is as follows ;

All that plaintiff has to allege and prove is that the carrier undertook to carry his goods and to deliver them, and that he failed to do it. It is for the carrier to explain why.

5 R 138-2 R 403-24 A 333-50 A 857-115 La 1-118 La 1 132 La 615 (646 )-2 Hutchinson ( 3 Ed.) 741-1 Michie 554 .

Carriers are liable for the loss of the things entrusted to them, unles they can prove that such loss was occasioned by uncontrollable events; they are liable if the things are stolen

by their servants or by strangers 132 La 615 --.

" In an action against a common carrier for damages to
goods,the proßf must be clear and certain to relieve him from
liability,that the damages did not arise while the goods were in
his hands;for the presumption is against him,not only from the
terms of the bill of lading,but from the policy of the law-.
In suits against common carriers the testimony in their behalf
of their clerks and servants must be received with great caution"
Bond vs Frost 8 A-297 -14 A 224."

" The ship receipting for goods as in good order is
liable for any damage subsequently discovered unless clearly
proved to have occurred before delivery.2 H.D. 1427 Nos.2 and 4

In 2 La 333 the Supreme Court said; "It is the interest
of such men( Architects ) to value services which they are in the
habit of performing,at the highest possible rate;and there is
sometimes an "esprit de corps" prevailing among them,formidable
to the interest of proprietors,when any collision occurs between
the latter and one of their body" 35 A 1132 ( 1138) .

"The judge can disregard the testimony of witnesses,
if he believes they are not telling the truth,and give judgment
as if no evidence had been addressed."13 La 412-14 A 224-24 A 332.

"The testimony of an attorney for his client is not full
proof of a fact,particularly when the attorney would be personally
responsible if the action fail.Such evidence has always been
held to be of an inferior kind."7 A 580

If the testimony of Surgi is true,Bradley never saw the
hog,as it was sent to the dump as soon as Surgi says he ascer-
tained its condition.

It was admitted that Weber would testify that he went
to plaintiff's residence to inform him that his hog had been
sent to the dump;but it was not stated that Weber had seen the
Hog,nor that he had carried the hog,to the dump.The only·
witnesses therefore against the plaintiff and his disinterested

witness,Northern,are the two witnesses Dessonier and Surgi,both
employees of the defendant and both interested in discharging
themselves from any responsibility in the matter for failure to
deliver the hog.We prefer to beleive the plaintiff and his dis-
interested witness,against these two interested witnesses.

Plaintiff's testimony is probable; the testimony of
Dessonier and Surgi se exagerated and seems to us improbable.
It has already been shown that their testimony was proven incor-
rect in the matter of the conditions of the weather.Their testi-
mony is that it was warm.This case was tried about a year after
January 23rd 1920 and it is not probablem that they remembered
the temperature on that day.Besides,the official records that
it was rather cool than warm.They testified that the hog smelled
very strongly and was decomposed and wormy,The Station agent
who received the hog at Plattenburg at 2 @'clock on January 23rd
did not perceive any odor;the defenadnts defendants agent who
received and handled the hog at the railroad station and at the
Union Station at 7.30 P.M. of the same day,did not smell any-
thing,it is inconceivable that the decomposition and smell and
maggots should have set twelve hours afterwards.The smell should
have preceded the maggots by more than twelve hours.

Plaintiff swears he remained home all of the 24th,and
that no one same to his house from defendant company.According
to Dessonnier and Surgi,this hog,of the value of $200.00 was
condemned by them,and sent to the dump,before they notified the
plaintiff.It is impossible that these subordinate agents should
have taken the responsibility of such action concerning an articme
of that value without consulting their superiors,or establishing
the facts,if not with the plaintiff himself,at least with disin-
terested witnesses.But if they did,their action was illegal.
Plaintiff was entitled to a delivery to him of his hog,in good
or bad condition.But the defendants say that they would have
violated the law by carrying a foul smelling animal through the

425

streets.They refer to no law or ordinance on the subject.But if there was such a law, they would not have violated it any more by carrying the hog to its consignee ,2236 Eighth Street than by taking it to the dump back of town.But no witness is produced who threw the hog or who saw the hog thrown on the dump.

But the defendant's subsequent inaction in the matter does not satisfy us,that it made any efforst to ascertain the truth of this case.It was not until May that it condescended to inform the plaintiff that it rejected his claim.This evidenced a reckless disregard of plaintiff's rights which does not put the defendant in a favorable light. *Besides, they never claimed the freight for the hog.* The burden was upon the defendant to prove its ground of defense 14 A 224-10 A 413. It has failed to establish it to our satisfaction.

The judge of the trial Court was of that opinion,and we agree with him.

Judgment affirmed.

January 22nd 1923